**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **DAN RISK RETENTION GROUP, INC.**<br><br>Plaintiff,<br><br>**v.**<br><br>**PADI AMERICAS, INC., PADI WORLDWIDE CORPORATION, NAUI SERVICES GROUP, INC., NATIONAL ASSOCIATION OF UNDERWATER INSTRUCTORS, INC., SCUBATOYS ENTERPRISES, LLC, SCUBA RANCH AND RECREATION PARKS, LLC d/b/a SCUBA RANCH, GREGORY KNAUER, JONATHAN ROUSSEL, JOSEPH JOHNSON, and WILLIAM ARMSTRONG,**<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **CIVIL ACTION NO. . 3:26-cv-1976** |

**ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff DAN Risk Retention Group, Inc. ("DAN") files this Original Complaint for Declaratory Judgment against Defendants PADI Americas, Inc., PADI Worldwide Corporation, NAUI Services Group, Inc., National Association of Underwater Instructors, Inc., ScubaToys Enterprises, LLC, Scuba Ranch and Recreation Parks, LLC d/b/a Scuba Ranch, Gregory Knauer, Jonathan Roussel, Joseph Johnson, and William Armstrong (collectively, "Defendants") and would respectfully show the Court as follows:[1]

[1] DAN is asking the Court for a declaratory judgment regarding its obligation to provide the Defendants a defense under various insurance policies issued by DAN to claims made in an underlying lawsuit, Cause No. DC-26-01736, *Heather Harrison and Mitchell Harrison, Individually and as Representatives of the Estate of D.H., a Minor (Deceased) v. ScubaToys Enterprises, LLC, et al.*, pending in the 160th Judicial District Court of Dallas County, Texas. Pending the outcome of this declaratory judgment action, DAN is providing each of the Defendants a defense to the underlying lawsuit under a full reservation of rights.

## I. INTRODUCTION

1. Defendants have been sued for negligence, gross negligence, wrongful death, survival, and premises liability in the lawsuit styled as Cause No. DC-26-01736; *Heather Harrison and Mitchell Harrison, Individually and as Representatives of the Estate of D.H., a Minor (Deceased) v. ScubaToys Enterprises, LLC, et al*., pending in the 160th Judicial District Court of Dallas County, Texas (the "Underlying Lawsuit"). Defendants claim that the Underlying Lawsuit is covered under various professional liability ("PL") and commercial general liability ("CGL") insurance policies issued by DAN to certain of the Defendants.

2. DAN seeks a declaration pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and Federal Rule of Civil Procedure 57 that it does not owe a duty to defend or indemnify Defendants under the insurance policies issued to PADI, ScubaToys, Scuba Ranch, and Greg Knauer by DAN.

## II. PARTIES AND SERVICE

3. Plaintiff DAN Risk Retention Group, Inc. is a corporation organized and existing under the laws of the State of South Carolina, with its principal place of business located in Charleston, South Carolina.

4. Defendant PADI Americas, Inc. ("PADI Americas") is a corporation organized under the laws of the State of California. PADI Americas, Inc. can be served through its registered agent, Chad Kuehn, at 30151 Tomas Rancho, Santa Margarita, CA 92688, or wherever the registered agent may be found.

5. Defendant PADI Worldwide Corporation ("PADI Worldwide") is a corporation organized under the laws of the State of California. PADI Worldwide Corporation can be served through its registered agent, Chad Kuehn, at 30151 Tomas Rancho, Santa Margarita, CA 92688, or wherever the registered agent may be found.

6. PADI is an acronym for "Professional Association of Diving Instructors." Defendant PADI Americas owns the trade name "Professional Association of Diving Instructors."

7. Defendants, PADI Americas and PADI Worldwide, are referred to collectively hereinafter as "PADI," as each corporation commonly refers to itself, both internally and externally, to consumers and divers throughout the world.

8. Defendant NAUI Services Group, Inc. ("NSG") is a corporation organized under the laws of the State of Florida. NSG can be served through its registered agent, Todd Bray, 9030 Camden Field Parkway, Riverview, FL 33578, or wherever the registered agent may be found.

9. Defendant National Association of Underwater Instructors, Inc. ("NAUI") is a not-for-profit corporation organized under the laws of the State of Florida. NAUI can be served through its registered agent Charles Weitzel, CPA, 6810 Front Street, Key West, FL 33040, or wherever the registered agent may be found. NAUI and NSG will be referred to collectively in this complaint as "NAUI."

10. Defendant ScubaToys Enterprises, LLC ("ScubaToys") is a domestic limited liability company organized under the laws of the State of Texas. ScubaToys maintains its principal place of business in the State of Texas at 1609 S. Interstate 35E, Carrollton, TX 75006. It may be served with process by serving its registered agent, Joe Howard Johnson, at 1609 S. Interstate 35E, Carrollton, TX 75006, or wherever the registered agent may be found. The only officer, director, member, partner, or manager of ScubaToys is Joe Howard Johnson, who is domiciled in Texas and is a citizen of Texas.

11. Defendant Scuba Ranch and Recreation Parks, LLC, d/b/a the Scuba Ranch ("Scuba Ranch") is a domestic limited liability company organized under the laws of the State of Texas. Scuba Ranch maintains its principal place of business in the State of Texas at 7525 Sunset Blvd.,

Rowlett, TX 75088. It may be served with process by serving its registered agent, Michelle Chumley, at 2404 Racheal Dr., Heath, TX 75032, or wherever the registered agent may be found. On information and belief, the officers, directors, members, partners, and managers of Scuba Ranch are Michelle Chumley and Reagan Dawson, both of whom are domiciled in and citizens of Texas.

12. Defendant Gregory Knauer is an individual and resident of Texas and a citizen of the State of Texas. He may be served with process at 1110 Green Leaf Lane, Duncanville, TX, 75137, or wherever he may be found.

13. Defendant Joseph Johnson is an individual and resident of Texas and a citizen of the State of Texas. Johnson may be served with process at 4514 W Highway 114 Paradise, TX 76073, or wherever he may be found.

14. Defendant Jonathan Roussel is an individual and resident of Texas and a citizen of the State of Texas. He may be served with process at 8909 Boundbrook Avenue, Dallas, TX 75243, or wherever he may be found.

15. Defendant William Armstrong is an individual and resident of Texas and a citizen of the State of Texas. He may be served with process at 15001 County Road 1100, Blue Ridge, TX 75424, or wherever he may be found.

## III. JURISDICTION AND VENUE

16. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.

17. This Court has personal jurisdiction over PADI, NSG, and NAUI because this dispute arises out of or relates to their contacts with Texas. The Underlying Lawsuit is pending in Texas, the alleged injury that is the subject of the Underlying Lawsuit occurred in Texas, DAN's alleged

obligations to provide coverage for the Underlying Lawsuit are centered in Texas, and PADI, NSG, and NAUI each seek to avail themselves of the benefits of such insurance in Texas. Thus, these defendants should reasonably anticipate being haled into Texas court with regard to their requests for coverage from DAN.

18. This Court has personal jurisdiction over ScubaToys, Scuba Ranch, Knauer, Scuba Knauer, Johnson, Roussel, and Armstrong because each maintains its or his principal place of business and residence in Texas.

19. Further, this Court has personal jurisdiction over ScubaToys, Scuba Ranch, Knauer, Scuba Knauer, Johnson, Roussel, and Armstrong because they allege they are entitled to insurance coverage from DAN under policies of insurance procured by and issued in Texas to them, and therefore they seek to avail themselves of the benefits of such insurance.

20. Venue is proper in the Northern District of Texas under 28 U.S.C. § 1391 because the insurance policies at issue were issued to ScubaToys, Scuba Ranch, Knauer, Scuba Knauer, Johnson, Roussel, and Armstrong and they are residents of this District and subject to this Court's personal jurisdiction.

21. Further, venue is proper in the Northern District of Texas under 28 U.S.C. § 1391 as to all defendants because "a substantial part of the events or omissions giving rise to the claim occurred" in this district, namely the events giving rise to the Underlying Lawsuit.

## IV. FACTUAL BACKGROUND

### A. The DAN Policies

22. DAN issued the following CGL policies that are at issue in this lawsuit (collectively and individually, the "CGL Policies"). The CGL Policies are identified below:

| Policy No. | Policy Period | Named Insured | Alleged Additional Insured(s) |
|---|---|---|---|
| GL110-123899 | October 13, 2024 to October 13, 2025 | ScubaToys[2] | NAUI,<br>Scuba Ranch |
| GL112-124624 | July 1, 2025 to July 1, 2026 | Scuba Ranch | PADI |
| GL112-124454 | June 30, 2025 to June 30, 2026 | PADI | Scuba Ranch |

23. The pertinent language of each of the CGL Policies is substantially identical. Each policy provides coverage for "those sums that the insured becomes legally obligated to pay as damages because of **Bodily Injury** or **Property Damage**," pursuant to its terms, conditions and exclusions. The CGL Policies provide that DAN:

> will have the right and duty to defend the **Insured** against any **Suit** seeking those damages. However, we will have no duty to defend the **Insured** against any **Suit** seeking damages for **Bodily Injury** or **Property Damage** to which this insurance does not apply.

CGL Policies, Section I, Coverages, Coverage A, Bodily Injury and Property Damage Liability, 1. Insuring Agreement.

24. Section 2 sets forth exclusions from coverage, including an exclusion for claims arising out the rendering or failure to render "Professional Services." The exclusion reads:

> This insurance <u>does not apply</u> to **Bodily Injury** or **Property Damage** or **Personal and Advertising Injury** that arises out of the rendering of or failure to render any professional services. Professional services include but are not limited to advice, instruction, supervision or direction in connection with a training program for either recreational or certification purposes, including but not limited to instruction or supervision in the activity of water skiing, jet skiing, operation of a boat, parasailing, hang gliding, paragliding, ultra-light flying, kite boarding, kite surfing, snow kiting, surfing, wake boarding, scuba diving, skin diving, swimming or any other recreational activity.

CGL Policies, Section I, Coverages, Coverage A, Bodily Injury and Property Damage Liability, 2. Exclusions, t. Professional Liability (emphasis in original).

---

[2] The ScubaToys CGL Policy also names as insureds the members or managers of ScubaToys LLC as well as ScubaToys' employees and volunteer workers. Under these provisions, Joseph Johnson, Greg Knauer, William Armstrong, and Jonathan Roussel may also be named insureds.

24. DAN issued the following PL (Professional Liability) policies that are at issue in this lawsuit (collectively and individually, the "PL Policies"). The PL Policies are identified below:

| Policy No. | Policy Period | Named Insured(s) | Alleged Additional Insured(s) |
|---|---|---|---|
| GPL111-123813 | October 1, 2024 to October 1, 2025 | ScubaToys; Greg Knauer, Jonathan Roussel, William Armstrong[3] | NAUI, PADI, Scuba Ranch |
| GPL112-124521 | June 30, 2025 to June 30, 2026 | PADI | Scuba Ranch |
| PL111-119543 | January 15, 2025 to January 15, 2026 | Greg Knauer | NAUI, PADI, ScubaToys, Scuba Ranch |

25. The insuring agreement of each of the PL Policies contains the following language:

> Subject to the applicable Limit of Liability, the Underwriter agrees to pay on behalf of the **INSURED** all sums which the **INSURED** shall become legally obligated to pay as **DAMAGES** for **BODILY INJURY** and/or **PROPERTY DAMAGE** for **CLAIMS** arising from any negligent act, error or omission in the rendering of or failure to render **PROFESSIONAL SERVICES by the INSURED**.

PL Policies, Insuring Agreements, 1. Coverage-Claims Made and Reported, a.

26. "Professional Services" is defined as:

> a. The instruction, assisting with instruction, supervision, or in-water guiding of a **PARTICIPANT** engaged in swimming, snorkeling, skin diving, free diving, RSSA (Recreational Surfaces Supplied Air) diving, SCUBA (Self-Contained Underwater Breathing Apparatus) diving (including recreational SCUBA, technical and rebreather SCUBA, and extended range SCUBA) breath-hold apnea, swimming or diving emergency response, swimming or diving professional development certification programs, mermaiding, lifeguarding, or public safety diving where such instruction, assisting with instruction, supervision, or guiding is

[3] It is unclear at this point whether Joseph Johnson is insured under the ScubaToys PL Policy. The policy includes as insureds members of ScubaToys' professional staff whose names appear in the "Schedule of Named Insured Professional Staff" or who are otherwise identified in writing to DAN as members of the professional staff. Joseph Johnson's name is not included in the attached schedule, and DAN is not currently aware of ScubaToys' having notified DAN that Joseph Johnson was a member of its professional staff.

provided by a properly qualified and trained **INSURED** in his or her capacity as a certified swim or dive professional; and

b. The training and supervision of a **PARTICIPANT** engaged in learning oxygen administration or other swimming or diving first-responder types first aid skills when provided by properly qualified and trained **INSURED** in his or her capacity as a certified first aid instructor; and,

c. For divemasters, or their equivalent, assisting an instructor with teaching and approved course or supervising and/or in-water guiding of a swimmer or certified diver in one of the swimming or diving activities described in 10a. above for which the Divemaster, or their equivalent, is properly qualified and trained, including but not limited to, providing first aid, conducting refresher SCUBA training for previously certified divers, and supervising confined in-water activities for Try-A Dive, Discover Scuba Diving, Bubblemaker, Seal Team and other similar introductory swimming and diving activities.

PL Policies, Definitions, 10.

27. The PL Policies exclude coverage for the following claims, among others:

1. Arising out of "any **EVENT** involving any swimming or diving activities in which the **INSURED** was not an active member in good standing with the applicable certification agency or agencies through which the training or supervision was offered at the time of the **EVENT**;"

2. Arising out of any **EVENT** involving training or supervisory dive or swim activity conducted by the **INSURED** that fails to meet the standards of the applicable certification training agency or agencies through which the training or supervision was offered, provided that the failure to meet the standard was a contributing cause of the **EVENT,** and specifically including but not limited to the following;

a. Any event involving an introductory/discover scuba experience (any program designed to introduce uncertified divers to SCUBA diving via a supervised, controlled open water experience) that was not within the standards of either the Recreational SCUBA Training Council (RSTC) or the certification agency under which the introductory experience was offered;

b. Any **EVENT** involving a training dive for anyone under the age of 10, except those courses that are taught in confined water only (e.g. swimming pools) and such may be offered to anyone age 7 and older; or

c. Any **EVENT** involving an introductory/discover scuba experience (any program designed to introduce uncertified divers to SCUBA diving via a supervised, controlled open water experience) that was not within the

standards of either the Recreational SCUBA Training Council (RSTC) or the certification agency under which the introductory experience was offered;

****

4. Involving an **INSURED** who does not have appropriate training and/or all appropriate certifications (including first aid training, when required ) to teach the course or supervise the dive or swim activity which resulted in the **EVENT**, specifically including but not limited to an event involving technical training and/or technical training dives where the **INSURED** is not a technically certified professional or where the **INSURED** is a technically certified professional but exceeds the depths for which the **INSURED** is trained and certified to teach and slash or supervise.

5. Where the **INSURED**:

a. fails to obtain from the **PARTICIPANT** (or the parent(s) and/or legal guardian(s) of the **PARTICIPANT** if a minor) a completed medical history form prior to in- water training; or
b. allows a person to participate where the medical history form of that **PARTICIPANT** reveals a medical condition that is contraindicated for safe participation in any in-water activities and the **PARTICIPANT** has not provided a medical release from a physician or other licensed medical professional qualified to provide such release (who is not the **PARTICIPANT** or the parent and/or legal guardian of a **PARTICIPANT**) approving the proposed in-water activity prior to any in-water training or supervision; or

c. fails to obtain from the **PARTICIPANT** (or the parent(s) and or legal guardian(s) of the **PARTICIPANT** if a minor) a completed and signed written release of liability and assumption of risk in a form approved by the certification agency through which the training or supervision was offered and naming the **INSURED** as a released party; or

d. fails to obtain from the **PARTICIPANT** (or the parent(s) and/or legal guardian(s) of the **PARTICIPANT** if a minor) a completed and signed written release of liability and assumption of risk which acknowledges that some dive sites are remote, that a recompression chamber may not be readily available, and that the **PARTICIPANT** still wants to continue their training or diving and assume the risk in the absence of a recompression chamber; or

e. fails to retain teaching records for each **PARTICIPANT** for a minimum of five (5) years, including records reporting the **PARTICIPANT'S** progress and results of knowledge tests for the purpose of evaluating the **PARTICIPANT'S** understanding of the instructional material.

> 6. Arising out of any activity of the **INSURED** involving the setting of standards or credentialing relating to diving, swimming or any other activity, including but not limited to standards or credentialing for training, certification, qualification to provide services or instruction related to diving, swimming or any other activity, safety, equipment, dive center or resort operations or qualifications or other operations or qualifications, the establishment of ratings, classifications or codes or the issuance of manuals, guidelines, instructions, bulletins, advisories or other publications.

PL Policies, Exclusions Related to Professional Standards and Conduct.

28. The PL Policies also contain an Additional Insured Endorsement that significantly limits coverage afforded to additional insureds. The endorsement reads in pertinent part:

> The coverage afforded to these additional **INSUREDS** is limited solely to "vicarious liability" of the additional **INSURED** that is a specific and direct result of a negligent act, error or omission by the **NAMED INSURED** or a member of the **NAMED INSURED'**s professional staff who qualifies as an **INSURED** in rendering or failing to render services. "Vicarious liability" as used in this endorsement means liability that is imposed on the additional **INSURED** solely by virtue of its relationship with the **NAMED INSURED** or a member of the **NAMED INSURED'**s professional staff who qualifies as an **INSURED**, and not due to any act, error or omission of the additional **INSURED**.

PL Policies, Additional Insured Designated Person or Organization Endorsement.

**B. The Underlying Lawsuit**

29. On January 30, 2026, Plaintiffs Heather Harrison and Mitchell Harrison, Individually and as Representatives of the Estate of D.H., a Minor (Deceased) filed the Underlying Lawsuit against each of the Defendants for claims of negligence, gross negligence, wrongful death, survival, and premises liability.[4]

30. The Harrisons contend that they enrolled D.H. in a private entry-level open water scuba certification course developed by NAUI and conducted by ScubaToys, a commercial dive training operation, and its agents and employees.

---

[4] DAN's references to the allegations made in the Underlying Lawsuit are without regard as to their truth or falsity.

31. On August 14, 2025, Knauer, who is a NAUI-certified Course Director, allegedly provided six hours of private instruction to D.H., which included approximately three hours of in-water instruction in a pool, known as confined water training.

32. According to the Underlying Lawsuit, NAUI Standards required that D.H. complete at least ten hours of confined water training to be eligible for open water training.

33. Additionally, the Harrisons contend that Knauer and ScubaToys did not provide D.H. with a timing device, depth gauge, or dive computer, during her confined water training, and Knauer did not show D.H. how to use a timing device or dive computer underwater.

34. At the conclusion of D.H.'s August 14, 2025 six-hours of instruction, which included no more than three hours in the pool, the Harrisons contend that Knauer, Johnson, and ScubaToys jointly decided to move D.H. to open-water training.

35. The open-water training was set to take place at Scuba Ranch, a dive facility, on August 16, 2025. Scuba Ranch is a member of PADI, a global recreational and diving membership and training organization. The Harrisons contend that:

- Knauer and ScubaToys personnel fitted D.H. with additional scuba equipment for her to use in the lake at The Scuba Ranch, including a wet suit, buoyancy compensator device ("BCD"), regulator, scuba tank, six pounds of lead weights and other necessary equipment.
- Knauer and ScubaToys did not provide D.H. with a dive computer, depth gauge, or timing device, nor did they instruct her in their use. The Harrisons allege that this equipment was necessary to allow divers to ascend and descend safely and know their depth.

36. The Underlying Lawsuit alleges that when the Harrisons arrived at Scuba Ranch, D.H. was placed in a group of seven divers, even though her parents had signed her up for private instruction.

- The Harrisons allegedly protested the size of the diving group.
- They contend they were told that D.H. would "be safe" because Roussel, a NAUI-certified Divemaster, would be D.H's dive buddy.
- Roussel allegedly told D.H's father, "I will not take my eyes off your daughter."
- "Based on the representation that D.H. would be paired with a qualified NAUI Divemaster during her open water training, and Roussel's statement that he would not take his eyes off of D.H., [the Harrisons] allowed D.H. to participate in the open water training class at The Scuba Ranch."
- D.H.'s dive buddy was another twelve-year-old student, not Roussel.

37. The Underlying Lawsuit alleges that Armstrong, who was the NAUI-certified instructor at Scuba Ranch that day, arrived at Scuba Ranch after working a full day as an Assistant Chief Deputy at the Collin County Sheriff's Department the day before, followed by a full overnight shift as a security guard, and had thus had "little to no sleep."

38. The Underlying Lawsuit alleges that the pre-dive brief did not include information about the visibility or temperature of the water. According to the Underlying Lawsuit,

- "Multiple eyewitnesses have described the underwater visibility at The Scuba Ranch on August 16, 2025 as varying between two and four feet in the area where D.H. was about to undergo training."
- "[N]either Armstrong nor Roussel checked the temperature of the water and the visibility underwater" or briefed the students about these factors prior to the dives.

- "The Scuba Ranch is required to adhere to PADI Standards and is obligated to assess water conditions and visibility on a daily basis, and to exercise continuous and sound judgment before allowing scuba training to be undertaken at its facility."
- "[I]f water conditions and visibility are poor, The Scuba Ranch is obligated to lower instructor to student ratios at its facility."
- Additionally, PADI standards for training facilities require both confined water and open water training for inexperienced divers be conducted in "pool like" conditions.
- Scuba Ranch is a member of PADI Retailer and Resort Association ("PADI RRA"), and "PADI RRA members are required to follow PADI Training Standards and Procedures."

39. The Underlying Lawsuit alleges that "PADI did not adhere to its own Standards and applicable industry standards and that PADI failed to apply good judgment in assessing the safety of The Scuba Ranch as a suitable dive training facility," which had continuous "poor visibility and water conditions" not suitable for entry-level divers.

40. The Underlying Lawsuit alleges the following:

- D.H. was not properly weighted for the open water training dives, and Armstrong did not check to ensure she was properly weighted.
- During the dive, D.H. had difficulty with her buoyancy.
- The group resurfaced, Armstrong and Roussel checked their air, and they descended again.
- D.H. became separated from Armstrong, Roussel, and the remainder of the class.
- When the students regrouped underwater and Armstrong and/or Roussel realized D.H. was not with them, they ascended to the surface.

- "[U]pon information and belief, multiple minutes passed before anyone, including the Instructor and Divemaster, detected D.H.'s absence."
- Armstrong descended to look for D.H., was unable to locate her, and emergency services were called.
- Armstrong and Roussel were allegedly unhelpful in guiding the search.

41. D.H. was found nonresponsive at a depth of 45 feet approximately 30 minutes after she was last seen alive; her regulator was not in her mouth, and one of her fins was off.

42. Emergency medical personnel could not revive D.H.

43. The Underlying Lawsuit alleges that Johnson said in a video during a ScubaToys staff meeting in 2017 that "he and ScubaToys could kill two students each year and still be 'fine.'"

- This video allegedly was provided to NAUI and NSG for corrective action, but they declined to take any action because ScubaToys is allegedly the largest NAUI certifying facility in the United States.

**1. Claims against ScubaToys**

44. The Underlying Plaintiffs allege that the following specific acts and omissions by ScubaToys caused or contributed to D.H.'s death:

> 129. [Underlying] Plaintiff's injuries and damages were proximately caused by the negligent acts and omissions of [Underlying] Defendant Scubatoys, acting through its employees and agents, which are generally described herein. A non-exhaustive list of Scubatoys' negligence includes, but is not limited to, the following:
>
> a. failing to exercise ordinary care in the selection, coordination, and supervision of the scuba diving instruction provided to D.H.;
>
> b. failing to ensure that instructors assigned to D.H. were competent, properly trained, and fit to instruct a minor in open water scuba diving;

> c. failing to ensure that student-to-instructor ratios were reasonable and safe under the circumstances, particularly given D.H.'s age and inexperience;
>
> d. failing to ensure that the equipment provided to D.H. was appropriate, properly fitted, inspected, and safe;
>
> e. failing to warn Plaintiffs of the risks created by defective training standards, abbreviated instructional requirements, and excessive student-to-instructor ratios;
>
> f. misrepresenting and/or overstating the safety, rigor, and protective effect of its affiliations with certifying agencies, including NAUI;
>
> g. undertaking to provide scuba instruction and related services and then performing those services negligently; and
>
> h. such other acts and omissions as discovery will reveal.
>
> 130. At the time that Scubatoys facilitated, coordinated, and it knew, or reasonably should have known, that Plaintiffs would rely on Scubatoys to perform its services and duties with due care. As a result of Scubatoys' failures, the risk of harm to D.H. increased and this incident occurred.
>
> 131. Each of these acts and omissions by Scubatoys, singularly and in combination with others, constituted negligence which proximately caused D.H.'s injuries and death and [Underlying] Plaintiffs' extensive damages.

Plaintiffs' Original Petition at pp. 24 and 25.

**2. Claims against Scuba Ranch**

45. The Underlying Plaintiffs allege that the following specific acts and omissions by Scuba Ranch caused or contributed to D.H.'s death:

> NEGLIGENCE
>
> 133. [Underlying] Plaintiffs' injuries and damages were proximately caused by the negligent acts and omissions of Scuba Ranch, acting through its employees and agents, which are generally described herein. A non-exhaustive list of Scuba Ranch's negligence includes, but is not limited to, the following:
>
> a. failing to exercise ordinary care in the operation, control, and supervision of the scuba training activities conducted at its facility;
>
> b. failing to ensure that the number of students per instructor was reasonable and safe under the circumstances;

c. failing to implement and enforce appropriate safety protocols for minor students engaged in open water scuba training;

d. failing to ensure adequate visibility, supervision, monitoring, and emergency response capabilities during the training dive;

e. allowing unsafe training conditions to exist in light of known visibility limitations and environmental conditions;

f. failing to properly vet, supervise, and monitor instructors conducting training at its facility; and

g. undertaking to host and facilitate scuba training and then performing those services negligently.

134. At the time that Scuba Ranch facilitated, coordinated, and it knew, or reasonably should have known, that [Underlying] Plaintiffs and Scubatoys would rely on Scuba Ranch to perform its services and duties with due care. As a result of Scuba Ranch's failures, the risk of harm to D.H. increased and this incident occurred.

135. Each of these acts and omissions by Scuba Ranch, singularly and in combination with others, constituted negligence which proximately caused D.H.'s injuries and death and [Underlying] Plaintiffs' extensive damages.

PREMISES LIABILITY

137. [Underlying] Defendant Scuba Ranch owned, occupied, and/or controlled the premises where the scuba diving training and certification activities involving D.H. took place, and where D.H. lost her life.

138. The poor visibility in the lake, the conditions present on the day of the incident, and other existing environmental and operational conditions posed an unreasonable risk of harm. The Scuba Ranch had actual knowledge of these unreasonably dangerous conditions, or, in the exercise of ordinary care, should have known that such conditions constituted an unreasonable risk of harm.

139. The unreasonably dangerous conditions on the premises were a proximate cause of D.H.'s injuries and death.

140. The dangerous conditions were not open and obvious to a twelve-year-old minor and were not risks D.H. could reasonably appreciate.

141. The Scuba Ranch permitted and encouraged use of the site as a training facility for entry-level scuba certification despite knowing or having reason to know the site was unsuitable for such use.

> 142. The Scuba Ranch failed to make the premises reasonably safe by restricting, modifying, or prohibiting entry-level and minor training dives under conditions of poor visibility or in numbers that were unsafe to entry-level students under the age of 16.
>
> 143. The Scuba Ranch failed to warn D.H., her parents, instructors, and dive operations of the dangers posed by poor visibility and site conditions for entry-level training, particularly for students under the age of 16.
>
> 144. Poor visibility at the site substantially impaired the ability of instructors and divemasters to maintain visual contact with student divers and increased the risk of separation, disorientation, uncontrolled descent, and drowning.
>
> 145. The Scuba Ranch knew or should have known of unreasonably dangerous conditions on the premises, including but not limited to extremely poor underwater visibility, depth changes, and environmental characteristics that made the site unsuitable for entry-level scuba training involving minors.
>
> 146. D.H. was an invitee because she entered the premises with The Scuba Ranch's knowledge and for the mutual benefit of [Underlying] Defendants in connection with paid scuba training activities.
>
> 147. The Scuba Ranch owned, occupied, operated, and controlled the premises where the training dive occurred and owed D.H. the duties owed to an invitee under Texas premises-liability law.
>
> 148. Because D.H. was an invitee on The Scuba Ranch's premises, The Scuba Ranch owed her a duty to exercise ordinary care to protect her from unreasonably dangerous conditions, including a duty to warn of such conditions or to make them reasonably safe.
>
> 149. The Scuba Ranch breached that duty by failing to warn D.H. of the unreasonably dangerous conditions and by failing to correct or make those conditions reasonably safe.
>
> 150. Each of these acts and omissions by The Scuba Ranch, singularly or in combination with others, constituted negligence and gross negligence which proximately caused the incident and [Underlying] Plaintiffs' injuries and damages.

Plaintiff's Original Petition, pp. 26-29.

**3. Claims against PADI**

46. The Underlying Plaintiffs allege that the following specific acts and omissions by PADI caused or contributed to D.H.'s death:

> 152. [Underlying] Plaintiffs' injuries and damages were proximately caused by the negligent acts and omissions of the [Underlying] PADI Defendants, acting

through its employees and agents, which are generally described herein. A non-exhaustive list of the [Underlying] PADI Defendants' negligence includes, but is not limited to, the following:

a. promulgating and maintaining inadequate and unreasonably dangerous training and safety standards for scuba instructors and student divers;

b. failing to reduce instructor training requirements, diver training requirements, and supervision standards in a manner that increased the risk of serious injury or death, particularly to students under the age of 16;

c. authorizing excessive student-to-instructor ratios that were unsafe, particularly for minor and inexperienced divers;

d. failing to adequately vet, monitor, discipline, or cancel the PADI RRA membership of unfit dive training facilities like The Scuba Ranch;

e. licensing and holding out The Scuba Ranch as competent and safe when it was not; and

f. undertaking to establish industry safety standards and then performing that undertaking negligently.

153. When they developed and published their training and safety standards, and conditioned PADI certification on compliance with those standards, the [Underlying] PADI Defendants knew or should have known that their exercise of reasonable care in doing so was necessary for the protection of D.H. and others similarly situated. The [Underlying] PADI Defendants nevertheless failed to exercise reasonable care in the performance of those services.

154. Additionally, the [Underlying] PADI Defendants knew or should have known that [Underlying] Plaintiffs, D.H., and The Scuba Ranch, and others similarly situated, would rely upon the [Underlying] PADI Defendants to exercise reasonable care to ensure that such training and safety standards were reasonably safe and would not place D.H. and similarly situated individuals at an unreasonable risk of harm.

155. [Underlying] Plaintiffs, D.H. and The Scuba Ranch reasonably relied on the [Underlying] PADI Defendants to exercise reasonable care to establish and enforce prudent scuba training and safety standards, to exercise reasonable care in the certification of instructors and facilities, to protect the safety of student divers like D.H., and to refrain from implementing training and safety standards that placed student divers like D.H. at an unreasonable risk of harm. The [Underlying] PADI Defendants' negligent failure to do so was a proximate cause of the injuries to and death of D.H. and the resulting damages.

156. Moreover, the [Underlying] PADI Defendants' performance of these obligations increased the risk of harm to D.H.

> 157. Each of these acts and omissions by the [Underlying] PADI Defendants, singularly and in combination with others, constituted negligence which proximately caused D.H.'s injuries and death and [Underlying] Plaintiffs' extensive damages.

Plaintiffs' Original Petition at pp. 29 and 30.

**4. Claims against NAUI**

47. The Underlying Plaintiffs allege that the following specific acts and omissions by NAUI caused or contributed to D.H.'s death:

> 159. [Underlying] Plaintiffs' injuries and damages were proximately caused by the negligent acts and omissions of the [Underlying] NAUI Defendants, acting through its employees and agents, which are generally described herein. A non-exhaustive list of the [Underlying] NAUI Defendants' negligence includes, but is not limited to, the following:
>
> a. promulgating and maintaining inadequate and unreasonably dangerous training and safety standards for scuba instructors and student divers;
>
> b. reducing instructor training requirements, diver training requirements, and supervision standards in a manner that increased the risk of serious injury or death;
>
> c. authorizing excessive student-to-instructor ratios that were unsafe, particularly for minor and inexperienced divers;
>
> d. failing to adequately vet, monitor, discipline, or decertify unfit instructors such as Joseph Johnson, even after NAUI had direct and irrefutable knowledge that Johnson exhibited a callous disregard for diver safety;
>
> e. failing to adequately vet, monitor, discipline, or decertify unfit providers such as Scubatoys, even after NAUI had direct and irrefutable knowledge that Scubatoys exhibited a callous disregard for diver safety;
>
> f. licensing and holding out instructors and providers as competent and safe when they were not; and
>
> g. undertaking to establish industry safety standards and then performing that undertaking negligently.
>
> 160. When they developed and published their training and safety standards, and conditioned NAUI certification on compliance with those standards, the [Underlying] NAUI Defendants knew or should have known that their exercise of

> reasonable care in doing so was necessary for the protection of D.H. and others similarly situated. The [Underlying] NAUI Defendants nevertheless failed to exercise reasonable care in the performance of those services.
>
> 161. Additionally, the [Underlying] NAUI Defendants knew or should have known that [Underlying] Plaintiffs, D.H., and The Scuba Ranch, and others similarly situated, would rely upon the [Underlying] NAUI Defendants to exercise reasonable care to ensure that such training and safety standards were reasonably safe and would not place D.H. and similarly situated individuals at an unreasonable risk of harm.
>
> 162. [Underlying] Plaintiffs, D.H. and The Scuba Ranch reasonably relied on the [Underlying] NAUI Defendants to exercise reasonable care to establish and enforce prudent scuba training and safety standards, to exercise reasonable care in the certification of instructors and facilities, to protect the safety of student divers like D.H., and to refrain from implementing training and safety standards that placed student divers like D.H. at an unreasonable risk of harm. The [Underlying] NAUI Defendants' failure to do so was a proximate cause of the injuries to and death of D.H. and the resulting damages.
>
> 163. Moreover, the [Underlying] NAUI Defendants' performance of these obligations increased the risk of harm to D.H.
>
> 164. Each of these acts and omissions by the [Underlying] NAUI Defendants, singularly and in combination with others, constituted negligence which proximately caused D.H.'s injuries and death and [Underlying] Plaintiffs' extensive damages.

Plaintiffs' Original Petition, pp. 30-32.

**5. Claims against Johnson**

48. The Underlying Plaintiffs allege that the following specific negligent acts and omissions by Johnson caused or contributed to D.H.'s death:

> 166. The combination of inadequate preparation, improper equipment, and known hazardous conditions created an extreme risk of drowning that [Underlying] Defendants consciously disregarded.
>
> 167. Nevertheless, [Underlying] Defendants failed to ensure adequate training, failed to verify readiness, and failed to provide properly fitting equipment before placing D.H. into an open-water training environment.
>
> 168. [Underlying] Defendants were further aware that D.H. was small in stature and required properly fitted equipment to safely participate in scuba training.

169. [Underlying] Defendants were aware that D.H. had received only minimal confined-water instruction shortly before the open-water dive and had not been adequately prepared for low-visibility open water conditions.

170. Despite this knowledge, [Underlying] Defendants proceeded with conscious indifference to D.H.'s rights, safety, and welfare.

171. [Underlying] Defendants knew that poor visibility, inadequate training, improper equipment sizing, and insufficient supervision created a high likelihood of serious injury or death to a minor diver.

172. At all relevant times, [Underlying] Defendants' conduct involved an extreme degree of risk, considering the probability and magnitude of harm to a twelve-year-old minor engaged in underwater scuba training.

173. [Underlying] Plaintiffs' injuries and damages were proximately caused by the negligent acts and omissions of the [Underlying] Individual Defendants, which are generally described herein. A non-exhaustive list of the[Underlying] Individual Defendants' negligence includes, but is not limited to, the following:

a. failing to properly provide adequate and complete confined water training to D.H.;

b. permitting and clearing D.H. to participate in open water training without sufficient time spent in confined water training;

c. failing to properly equip D.H. for the open water scuba training dives on August 16, 2025;

d. failing to properly train and prepare D.H. for the open water scuba training dives

on August 16, 2025;

e. conducting scuba instruction in conditions that were unsafe for a minor student; and

f. failing to follow basic safety principles applicable to scuba instruction.

Plaintiffs' Original Petition at pp. 32-34.

**6. Claims against Knauer**

49. The Underlying Plaintiffs allege that the following specific acts and omissions by Knauer caused or contributed to D.H.'s death:

166. The combination of inadequate preparation, improper equipment, and known hazardous conditions created an extreme risk of drowning that [Underlying] Defendants consciously disregarded.
167. Nevertheless, [Underlying] Defendants failed to ensure adequate training, failed to verify readiness, and failed to provide properly fitting equipment before placing D.H. into an open-water training environment.

168. [Underlying] Defendants were further aware that D.H. was small in stature and required properly fitted equipment to safely participate in scuba training.

169. [Underlying] Defendants were aware that D.H. had received only minimal confined-water instruction shortly before the open-water dive and had not been adequately prepared for low-visibility open water conditions.

170. Despite this knowledge, [Underlying] Defendants proceeded with conscious indifference to D.H.'s rights, safety, and welfare.

171. [Underlying] Defendants knew that poor visibility, inadequate training, improper equipment sizing, and insufficient supervision created a high likelihood of serious injury or death to a minor diver.

172. At all relevant times, [Underlying] Defendants' conduct involved an extreme degree of risk, considering the probability and magnitude of harm to a twelve-year-old minor engaged in underwater scuba training.

173. [Underlying] Plaintiffs' injuries and damages were proximately caused by the negligent acts and omissions of the [Underlying] Individual Defendants, which are generally described herein. A non-exhaustive list of the [Underlying] Individual Defendants' negligence includes, but is not limited to, the following:

a. failing to properly provide adequate and complete confined water training to D.H.;

b. permitting and clearing D.H. to participate in open water training without sufficient time spent in confined water training;

c. failing to properly equip D.H. for the open water scuba training dives on August 16, 2025;

d. failing to properly train and prepare D.H. for the open water scuba training dives on August 16, 2025;

e. conducting scuba instruction in conditions that were unsafe for a minor student; and

f. failing to follow basic safety principles applicable to scuba instruction.

Plaintiffs' Original Petition at pp. 32-34.

**7. Claims against Armstrong**

50. The Underlying Plaintiffs allege that the following specific acts and omissions by Armstrong caused or contributed to D.H.'s death:

> 166. The combination of inadequate preparation, improper equipment, and known hazardous conditions created an extreme risk of drowning that [Underlying] Defendants consciously disregarded.
>
> 167. Nevertheless, [Underlying] Defendants failed to ensure adequate training, failed to verify readiness, and failed to provide properly fitting equipment before placing D.H. into an open-water training environment.
>
> 168. [Underlying] Defendants were further aware that D.H. was small in stature and required properly fitted equipment to safely participate in scuba training.
>
> 169. [Underlying] Defendants were aware that D.H. had received only minimal confined-water instruction shortly before the open-water dive and had not been adequately prepared for low-visibility open water conditions.
>
> 170. Despite this knowledge, [Underlying] Defendants proceeded with conscious indifference to D.H.'s rights, safety, and welfare.
>
> 171. [Underlying] Defendants knew that poor visibility, inadequate training, improper equipment sizing, and insufficient supervision created a high likelihood of serious injury or death to a minor diver.
>
> 172. At all relevant times, [Underlying] Defendants' conduct involved an extreme degree of risk, considering the probability and magnitude of harm to a twelve-year-old minor engaged in underwater scuba training.
>
> 173. [Underlying] Plaintiffs' injuries and damages were proximately caused by the negligent acts and omissions of the [Underlying] Individual Defendants, which are generally described herein. A non-exhaustive list of the [Underlying] Individual Defendants' negligence includes, but is not limited to, the following:
>
> > a. failing to properly provide adequate and complete confined water training to D.H.;
> >
> > b. permitting and clearing D.H. to participate in open water training without sufficient time spent in confined water training;
> >
> > c. failing to properly equip D.H. for the open water scuba training dives on August 16, 2025;

d. failing to properly train and prepare D.H. for the open water scuba training dives on August 16, 2025;

e. conducting scuba instruction in conditions that were unsafe for a minor student; and

f. failing to follow basic safety principles applicable to scuba instruction.

174. In addition to the foregoing, [Underlying] Plaintiffs' injuries and damages were proximately caused by the negligent acts and omissions of the [Underlying] Defendants Armstrong and Roussel, which are generally described herein. A non-exhaustive list of the [Underlying] Defendants Armstrong and Roussel's additional negligence includes, but is not limited to, the following:

a. failing to ensure that D.H. was properly equipped for the open water scuba training dives on August 16, 2025;

b. failing to ensure that Armstrong was properly rested and fit to instruct and supervise the open water scuba training dives on August 16, 2025;

c. failing to properly supervise D.H. during the open water scuba training dives on August 16, 2025;

d. failing to maintain appropriate student-to-instructor ratios during the open water scuba training dives on August 16, 2025;

e. failing to adequately monitor D.H.'s location, air supply, and physical condition during the open water scuba training dives on August 16, 2025;

f. failing to ensure that D.H. remained under adequate professional supervision at all times while underwater;

g. failing to recognize and respond to D.H.'s observable difficulty maintaining neutral buoyancy, for which she had been inadequately trained to control;

h. failing to assist in preventing D.H. from becoming separated from the group;

i. failing to timely recognize that D.H. was missing from the training group; and

j. failing to respond promptly and appropriately when D.H. encountered distress and was determined to be missing during the open water scuba training dives on August 16, 2025.

175. Each of these acts and omissions by the [Underlying] Individual Defendants, singularly and in combination with others, constituted negligence

> which proximately caused D.H.'s injuries and death and [Underlying] Plaintiffs' extensive damages.

Plaintiffs' Original Petition at pp. 32-35.

**8. Claims against Roussel**

51. The Underlying Plaintiffs allege that the following specific acts and omissions by Armstrong caused or contributed to D.H.'s death:

> 166. The combination of inadequate preparation, improper equipment, and known hazardous conditions created an extreme risk of drowning that [Underlying] Defendants consciously disregarded.
> 167. Nevertheless, [Underlying] Defendants failed to ensure adequate training, failed to verify readiness, and failed to provide properly fitting equipment before placing D.H. into an open-water training environment.
>
> 168. [Underlying] Defendants were further aware that D.H. was small in stature and required properly fitted equipment to safely participate in scuba training.
>
> 169. [Underlying] Defendants were aware that D.H. had received only minimal confined-water instruction shortly before the open-water dive and had not been adequately prepared for low-visibility open water conditions.
>
> 170. Despite this knowledge, [Underlying] Defendants proceeded with conscious indifference to D.H.'s rights, safety, and welfare.
>
> 171. [Underlying] Defendants knew that poor visibility, inadequate training, improper equipment sizing, and insufficient supervision created a high likelihood of serious injury or death to a minor diver.
>
> 172. At all relevant times, [Underlying] Defendants' conduct involved an extreme degree of risk, considering the probability and magnitude of harm to a twelve-year-old minor engaged in underwater scuba training.
>
> 173. [Underlying] Plaintiffs' injuries and damages were proximately caused by the negligent acts and omissions of the [Underlying] Individual Defendants, which are generally described herein. A non-exhaustive list of the [Underlying] Individual Defendants' negligence includes, but is not limited to, the following:
>
> > a. failing to properly provide adequate and complete confined water training to D.H.;
> >
> > b. permitting and clearing D.H. to participate in open water training without sufficient time spent in confined water training;

c. failing to properly equip D.H. for the open water scuba training dives on August 16, 2025;

d. failing to properly train and prepare D.H. for the open water scuba training dives on August 16, 2025;

e. conducting scuba instruction in conditions that were unsafe for a minor student; and

f. failing to follow basic safety principles applicable to scuba instruction.

174. In addition to the foregoing, [Underlying] Plaintiffs' injuries and damages were proximately caused by the negligent acts and omissions of the [Underlying] Defendants Armstrong and Roussel, which are generally described herein. A non-exhaustive list of the [Underlying] Defendants Armstrong and Roussel's additional negligence includes, but is not limited to, the following:

a. failing to ensure that D.H. was properly equipped for the open water scuba training dives on August 16, 2025;

b. failing to ensure that Armstrong was properly rested and fit to instruct and supervise the open water scuba training dives on August 16, 2025;

c. failing to properly supervise D.H. during the open water scuba training dives on August 16, 2025;

d. failing to maintain appropriate student-to-instructor ratios during the open water scuba training dives on August 16, 2025;

e. failing to adequately monitor D.H.'s location, air supply, and physical condition during the open water scuba training dives on August 16, 2025;

f. failing to ensure that D.H. remained under adequate professional supervision at all times while underwater;

g. failing to recognize and respond to D.H.'s observable difficulty maintaining neutral buoyancy, for which she had been inadequately trained to control;

h. failing to assist in preventing D.H. from becoming separated from the group;

i. failing to timely recognize that D.H. was missing from the training group; and

j. failing to respond promptly and appropriately when D.H. encountered distress and was determined to be missing during the open water scuba training dives on August 16, 2025.

> 175. Each of these acts and omissions by the [Underlying] Individual Defendants, singularly and in combination with others, constituted negligence which proximately caused D.H.'s injuries and death and [Underlying] Plaintiffs' extensive damages.

Plaintiffs' Original Petition at pp. 32-35.

### C. The CGL Policies do not provide coverage for the Underlying Lawsuit to any Defendant.

52. The CGL Policies specifically exclude coverage for claims arising from an insured's rendering or failure to render professional services. The claims against all Defendants in the Underlying lawsuit fall squarely within this exclusion. The exclusion reads:

> This insurance <u>does not apply</u> to **Bodily Injury** or **Property Damage** or **Personal and Advertising Injury** that arises out of the rendering of or failure to render any professional services. Professional services include but are not limited to advice, instruction, supervision or direction in connection with a training program for either recreational or certification purposes, including but not limited to instruction or supervision in the activity of water skiing, jet skiing, operation of a boat, parasailing, hang gliding, paragliding, ultra-light flying, kite boarding, kite surfing, snow kiting, surfing, wake boarding, scuba diving, skin diving, swimming or any other recreational activity.

CGL Policies, Section I, Coverages, Coverage A, Bodily Injury and Property Damage Liability, 2. Exclusions, t. Professional Liability (emphasis in original).

53. All claims against all Defendants arise out of "Professional Services" as defined by the exclusion. Accordingly, there is no coverage for any Defendant for any claim under the CGL Policies. The CGL Policies impose no duty to defend the Defendants in the Underlying Lawsuit. For the same reasons, DAN has no duty to indemnify Defendants for the Underlying Lawsuit.

### D. The PL Policies do not provide coverage for the Underlying Lawsuit to NAUI, PADI, or Scuba Ranch.

#### 1. NAUI and PADI

##### a. Coverage is excluded by the Standards and Credentialing Exclusion.

54. The claims made against NAUI and PADI in the Underlying Lawsuit fall within an exclusion for claims arising from (1) establishing or setting standards for training/instruction programs for scuba diving or (2) credentialing instructors or facilities. The PL Policies exclude claims:

> Arising out of any activity of the **INSURED** involving the setting of standards or credentialing relating to diving, swimming or any other activity, including but not limited to standards or credentialing for training, certification, qualification to provide services or instruction related to diving, swimming or any other activity, safety, equipment, dive center or resort operations or qualifications or other operations or qualifications, the establishment of ratings, classifications or codes or the issuance of manuals, guidelines, instructions, bulletins, advisories or other publications.

PL Policies, Exclusions Related to Professional Standards and Conduct.

55. All of the claims against NAUI and PADI are based on alleged deficiencies in establishing training standards or failures in certifying or credentialing instructors (Johnson, Knauer, Armstrong, and Roussel) or facilities (ScubaToys and Scuba Ranch). Accordingly, the exclusion quoted here negates coverage for NAUI and PADI under the PL Policies.

**b. The Additional Insured limitation voids coverage.**

56. NAUI and PADI also are not covered under the ScubaToys and Knauer PL Policies. While NAUI and PADI are listed as additional insureds on these policies, each policy limits coverage available to additional insureds. Additional insureds are covered *only* to the extent a claimant seeks to hold them vicariously liable for the acts or omissions of a named insured or the named insured's professional staff. The Additional Insured Endorsement reads in pertinent part:

> The coverage afforded to these additional **INSUREDS** is limited solely to "vicarious liability" of the additional **INSURED** that is a specific and direct result of a negligent act, error or omission by the **NAMED INSURED** or a member of the **NAMED INSURED's** professional staff who qualifies as an **INSURED** in rendering or failing to render services. "Vicarious liability" as used in this endorsement means liability that is imposed on the additional **INSURED** solely by virtue of its relationship with the **NAMED INSURED** or a member of the **NAMED**

> **INSURED**'s professional staff who qualifies as an **INSURED**, and not due to any act, error or omission of the additional **INSURED**.

PL Policies, Additional Insured Designated Person or Organization Endorsement.

57. The Underlying Plaintiffs do not seek to hold NAUI and PADI vicariously liable for the acts or omissions of ScubaToys, Knauer, or members of their professional staff. Accordingly, these policies do not afford additional insured coverage to NAUI or PADI.

**2. Scuba Ranch**

58. Scuba Ranch is listed as an additional insured on the ScubaToys, PADI, and Knauer PL Policies. Plaintiffs in the Underlying Lawsuit do not seek to hold Scuba Ranch vicariously liable for the acts or omissions of ScubaToys, PADI, or Knauer. Accordingly, the limitation on additional insured coverage applies to negate any potential coverage for Scuba Ranch under the ScubaToys, PADI, and Knauer PL Policies.

## V. CLAIM FOR DECLARATORY RELIEF

60. DAN incorporates by reference each of the allegations in the foregoing paragraphs as if fully set forth herein.

**A. CGL Policies**

61. An actual case or controversy exists between DAN and Defendants regarding the availability, if any, of insurance coverage for the Underlying Lawsuit under the CGL Policies. DAN has no duty to defend or indemnify Defendants for the Underlying Lawsuit under the CGL Policies because the terms, conditions, and exclusions in the CGL Policies do not provide coverage for the Underlying Lawsuit.

62. Accordingly, DAN seeks a declaration as to the parties' rights and obligations under the CGL Policies with regard to the Underlying Lawsuit, as follows:

**1. Policy No. GL110-123899**

• DAN has no duty to defend or indemnify named insured, ScubaToys Enterprises, LLC, or potential named insureds, Joseph Johnson, Greg Knauer, William Armstrong, or Jonathan Roussel, in the Underlying Lawsuit under the terms of Policy No. GL110-123899 issued to ScubaToys Enterprises, LLC.

• DAN has no duty to defend or indemnify additional insureds, NAUI Services Group, Inc., National Association of Underwater Instructors, Inc., or Scuba Ranch and Recreation Parks LLC, in the Underlying Lawsuit under the terms of Policy No. GL110-123899 issued to ScubaToys Enterprises, LLC.

**2. Policy No. GL112-124624**

• DAN has no duty to defend or indemnify named insured, Scuba Ranch and Recreation Parks LLC, in the Underlying Lawsuit under the terms of Policy No. GL112-124624 issued to Scuba Ranch and Recreation Parks LLC.

• DAN has no duty to defend or indemnify additional insureds, PADI Americas, Inc. or PADI Worldwide Corporation, in the Underlying Lawsuit under the terms of Policy No. GL112-124624 issued to Scuba Ranch and Recreation Parks LLC.

**3. Policy No. GL112-124454**

• DAN has no duty to defend or indemnify named insureds, PADI Americas, Inc. or PADI Worldwide Corporation, in the Underlying Lawsuit under the terms of Policy No. GL112-124454 issued to PADI Americas, Inc. and PADI Worldwide Corporation.

• DAN has no duty to defend or indemnify additional insured, Scuba Ranch and Recreation Parks LLC, in the Underlying Lawsuit under the terms of Policy No. GL112-124454 issued to PADI Americas, Inc. and PADI Worldwide Corporation.

**B. PL Policies**

63. An actual case or controversy exists between DAN and certain Defendants regarding the availability, if any, of insurance coverage for the Underlying Lawsuit under the PL Policies. DAN has no duty to defend or indemnify certain Defendants for the Underlying Lawsuit under the PL Policies because the terms, conditions, and exclusions in the PL Policies do not provide coverage for the Underlying Lawsuit.

64. Accordingly, DAN seeks a declaration as to the parties' rights and obligations under the PL Policies with regard to the Underlying Lawsuit, including but not limited to, the following declarations:

**1. Policy No. GPL111-123813**

• DAN has no duty to defend or indemnify additional insureds, NAUI Services Group, Inc., National Association of Underwater Instructors, Inc., PADI Americas, Inc., PADI Worldwide Corporation or Scuba Ranch and Recreation Parks LLC, in the Underlying Lawsuit under the terms of Policy No. GPL111-123813 issued to ScubaToys Enterprises, LLC.

**2. Policy No. GPL112-124521**

• DAN has no duty to defend or indemnify named insureds, PADI Americas, Inc. or PADI Worldwide Corporation, in the Underlying Lawsuit under the terms of Policy No. GPL112-124521issued to PADI Americas, Inc. and PADI Worldwide Corporation.

• DAN has no duty to defend or indemnify additional insured, Scuba Ranch and Recreation Parks LLC, in the Underlying Lawsuit under the terms of Policy No. GPL112-124521 issued to PADI Americas, Inc. and PADI Worldwide Corporation.

**3. Policy No. PL111-119543**

• DAN has no duty to defend or indemnify additional insureds, NAUI Services Group, Inc., National Association of Underwater Instructors, Inc., PADI Americas, Inc., PADI Worldwide Corporation, or Scuba Ranch and Recreation Parks LLC, in the Underlying Lawsuit under the terms of Policy No. PL111-119543 issued to Greg Knauer.

## VI. PRAYER

WHEREFORE, PREMISES CONSIDERED, DAN Risk Retention Group, Inc. respectfully prays that the Court declare the rights and obligations of DAN Risk Retention Group and Defendants, PADI Americas, Inc., PADI Worldwide Corporation, NAUI Services Group, Inc., National Association of Underwater Instructors, Inc., ScubaToys Enterprises, LLC, Scuba Ranch and Recreation Parks, LLC d/b/a Scuba Ranch, Gregory Knauer, Jonathan Roussel, Joseph Johnson, and William Armstrong, under the Policies and applicable law relating to the Underlying Lawsuit and further award DAN any and all other relief as the Court deems just and equitable.

Respectfully submitted,

By: */s/ John B. Thomas*
John B. Thomas
Texas Bar No. 19856150
jthomas@hicks-thomas.com
Courtney Ervin
Texas Bar No. 24050571
cervin@hicks-thomas.com
Mark Lewis
Texas Bar No. 12299100
mlewis@hicks-thomas.com
Anna M. Archer
Texas Bar No. 24055111
aarcher@hicks-thomas.com
**HICKS THOMAS LLP**
700 Louisiana St., Suite 2300
Houston, Texas 77002
Telephone: 713.547.9100
Facsimile: 713.547.9150

AND

By: */s/ Stephen A. Melendi*
Stephen A. Melendi
Texas Bar No. 24041468
stephenm@tbmmlaw.com
**TOLLEFSON BRADLEY MITCHELL & MELENDI, LLP**
2811 McKinney Avenue, Suite 250 West
Dallas, Texas 75204
Telephone: 214-665-0100
Facsimile: 214-665-0199

**ATTORNEYS FOR PLAINTIFF DAN RISK RETENTION GROUP, INC.**