IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DAN RISK RETENTION GROUP, INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>PADI AMERICAS, INC., PADI WORLDWIDE CORPORATION, NAUI SERVICES GROUP, INC., NATIONAL ASSOCIATION OF UNDERWATER INSTRUCTORS, INC., SCUBATOYS ENTERPRISES, LLC, SCUBA RANCH AND RECREATION PARKS, LLC d/b/a SCUBA RANCH, GREGORY KNAUER, JONATHAN ROUSSEL, JOSEPH JOHNSON, and WILLIAM ARMSTRONG,<br><br>*Defendants*. | CIVIL ACTION NO. 3:26-cv-01976-L |

# Brief in Support of Defendants NAUI Services Group, Inc., and National Association of Underwater Instructors, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue[1]

[1] Use of Generative Artificial Intelligence. Pursuant to Local Rule 7.2(f), the undersigned counsel hereby discloses that generative artificial intelligence tools were used in the preparation of this document. No generative artificial intelligence tools were used without subsequent attorney review. All content, arguments, legal citations, and factual representations contained in this brief have been independently researched, revised, and reviewed by a licensed attorney admitted to practice before this Court.

## Table of Contents

I. INTRODUCTION ........ 1

II. FACTUAL BACKGROUND ........ 2

A. The Parties. ........ 2

B. The Underlying Lawsuit and DAN's Declaratory-Judgment Action. ........ 3

C. NSG and NAUI's Request for a Defense — and DAN's Response — Occurred Entirely Outside Texas. ........ 4

III. THE COURT LACKS PERSONAL JURISDICTION ........ 5

A. Rule 12(b)(2) Legal Standard ........ 5

B. This Court Lacks Personal Jurisdiction Over NSG and NAUI. ........ 6

1. NSG and NAUI Are Not Subject to General Jurisdiction in Texas. ........ 6

2. NSG and NAUI Are Not Subject to Specific Jurisdiction in Texas. ........ 7

3. Exercising Jurisdiction Over NSG and NAUI Would Offend Fair Play and Substantial Justice. ........ 12

C. Conclusion ........ 12

IV. VENUE IS IMPROPER AS TO NSG AND NAUI. ........ 12

A. Rule 12(b)(3) Legal Standard ........ 12

B. Venue is Improper ........ 13

1. The Residential Venue Provision, § 1391(b)(1), does not apply. ........ 13

2. The Transactional Venue Provision, § 1391(b)(2), does not apply. ........ 14

3. The Fallback Venue Provision, § 1391(b)(3), does not apply. ........ 15

C. Conclusion ........ 16

V. CONCLUSION AND PRAYER ........ 17

## Table of Authorities

### Cases

*AIG Prop. Cas. Co. v. Francis*, No. SA-21-CA-530-FB, 2021 U.S. Dist. LEXIS 273494, at *6 & *7 (W.D. Tex. 2021) ..... 15

*Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 56 (2013) ..... 13, 15

*BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) ..... 6

*Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 262 (2017) ..... 6

*Bristol-Myers Squibb*, 582 U.S. at 264 ..... 9

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) ..... 7

*Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019) ..... 5

*Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ..... 6

*Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432–33 (2d Cir. 2005) ..... 14

*Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1166 (10th Cir. 2010) ..... 14, 15

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) ..... 6

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362, 141 S. Ct. 1017, 209 L. Ed. 2d 225 (2021) ..... 5

*Founders Ins. Co. v. Billy's Bar & Grill, LLC*, Civil Action No. 3:18-cv-00367-M, 2019 U.S. Dist. LEXIS 183293, at *16 (N.D. Tex. 2019) ..... 16

*Halliburton Energy Services, Inc. v. Ironshore Specialty Insurance Co.*, 921 F.3d 522 (5th Cir. 2019) ..... 10

*Hawbecker v. Hall*, 88 F. Supp. 3d 723, 731 (WD. Tex. 2015) ..... 16

*Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) ..... 5

*Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) ..... 5

*Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001) ..... 5

*Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 585 (Tex. 2007) ..... 11

*Monkton Ins. Servs. v. Ritter*, 768 F.3d 429, 432-33 (5th Cir. 2014) ..... 6

*Nuttall v. Juarez*, 984 F. Supp.2d 637, 642 (N.D. Tex. 2013) ....................13

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001)........10

*Redi-Mix Sols. Ltd. v. Express Chipping, Inc.*, Civ. Action No. 6:16-CV-298-RWS-KNM, 2017 U.S. Dist. LEXIS 221118, 2017 WL 3671377, at *8 (E.D. Tex. Feb. 9. 2017)........................13

*Rusesabagina v. Gainjet Aviation*, No. 24-50630, 2025 U.S. App. LEXIS 24230, at *10-12 (5th Cir. 2025)........................6

*Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018) ........................5

*Sangha*, 882 F.3d at 101 ........................10

*See Bristol-Myers Squibb*, 582 U.S. at 262 ........................9

*Shambaugh & Son, L.P. v. Steadfast Ins. Co.*, 91 F.4th 364, 376 (5th Cir. 2024). ........................12

*Siragusa v. Arnold*, No. 3:12-CV-04497-M, 2013 U.S. Dist. LEXIS 131740, 2013 WL 5462286, at *3 (N.D. Tex. Sept. 16, 2013) ........................16

*Southampton, Ltd. v. Norman*, Civil Action No. 3:18-CV-1089-K, 2019 U.S. Dist. LEXIS 227279, at *14 (N.D. Tex. 2019)........................13

*Walden v. Fiore*, 571 U.S. 277, 283-84, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014) ........................5

*Walden v. Fiore*, 571 U.S. 277, 284–86 (2014) ........................6

*Walden*, 571 U.S. at 289–90 ........................9

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295, 297–98 (1980)........................8

*Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc.*, 982 F. Supp. 2d 717, 722 (W.D. Tex. 2013)........................14

**Statutes**

28 U.S.C. § 1391(b)........................13

28 U.S.C. § 1391(b)(1) ........................13

28 U.S.C. § 1391(b)(2) ........................15

**Treatises**

CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3806.1 (4th ed. 2024)........................15

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendants NAUI Services Group, Inc. ("NSG") and National Association of Underwater Instructors, Inc. ("NAUI") (together, "Movants") move, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3), to dismiss the claims asserted against them by Plaintiff DAN Risk Retention Group, Inc. ("DAN") in its Original Complaint for Declaratory Judgment ("Complaint") [ECF 1], for lack of personal jurisdiction and improper venue. In support, Movants state as follows:

## I. INTRODUCTION

This is a declaratory-judgment action brought by DAN, a South Carolina corporation, against, among others, NSG and NAUI, both Florida entities headquartered in Riverview, Florida. DAN seeks a declaration that it owes no duty to defend or indemnify Movants in connection with a wrongful-death lawsuit pending in Dallas County, Texas, styled *Heather Harrison and Mitchell Harrison, Individually and as Representatives of the Estate of D.H., a Minor (Deceased) v. ScubaToys Enterprises, LLC, et al.*, Cause No. DC-26-01736, in the 160th Judicial District Court, Dallas County, Texas (the "Underlying Lawsuit"). Compl. ¶¶ 1, 2, 29.

Movants do not contest this Court's jurisdiction over the Texas-based parties to this action — ScubaToys, Scuba Ranch, and the individual Defendants, all of whom are alleged to reside or maintain their principal place of business in Texas. *See* Compl. ¶¶ 10–15, 18–20. NSG and NAUI are a different story. Neither is incorporated in Texas, headquartered in Texas, or "at home" in Texas in any sense recognized by due process. Neither maintains an office, employee, bank account, or item of real property in this state. *See* Declaration of Terrence N. Tysall, Sr. ¶¶ 4–6 (App. at 2) [hereinafter, "Tysall Decl."].

The coverage dispute DAN has brought against NSG and NAUI does not arise from any contact between NSG or NAUI and Texas. NSG and NAUI's request that DAN provide a defense under the DAN policies was submitted to DAN at DAN's own offices in Charleston, South Carolina. DAN's decision how to respond to that request — including its decision to defend Movants under a reservation of rights — was made by DAN at its South Carolina headquarters and communicated to Movants in Florida. Tysall Decl. ¶¶ 11–13 (App. at 3). None of the events giving rise to DAN's claims against NSG and NAUI touched Texas at all.

DAN's sole basis for haling NSG and NAUI into a Texas federal court is Paragraph 17 of its Complaint, which alleges that personal jurisdiction exists because the Underlying Lawsuit happens to be pending in Texas, the injury underlying that separate lawsuit occurred in Texas, and NSG and NAUI supposedly "seek to avail themselves of the benefits of ... insurance in Texas." Compl. ¶ 17. None of these allegations describes a purposeful contact by NSG or NAUI with Texas connected to DAN's coverage claims. The location of a lawsuit to which NSG and NAUI happen to be parties — and for which they happen to be seeking a defense from an out-of-state insurer — is precisely the kind of "fortuitous" and "attenuated" contact that the Due Process Clause forbids courts from using as a jurisdictional hook. For the same reasons, and because no substantial part of the events giving rise to DAN's claims against NSG and NAUI occurred in this District, venue over those claims is likewise improper.

## II. FACTUAL BACKGROUND

### A. The Parties.

DAN is a corporation organized under the laws of South Carolina, with its principal place of business in Charleston, South Carolina. Compl. ¶ 3. NSG is a corporation organized under the laws of Florida, with its principal place of business in Riverview, Florida. Compl. ¶ 8; Tysall

Decl. ¶ 5 (App. at 2). NAUI is a Florida not-for-profit corporation under Section 501(c)(6) of the Internal Revenue Code, likewise headquartered in Florida, from which its business operations are coordinated. Compl. ¶ 9; Tysall Decl. ¶ 4 (App. at 2). NSG is a wholly-owned subsidiary of NAUI and provides NAUI's day-to-day business operations. Tysall Decl. ¶¶ 3, 5 (App. at 1-2). Neither NSG nor NAUI maintains any office space, employees, real estate, bank accounts, or other assets in Texas. *Id*. ¶ 6 (App. at 2).

**B. The Underlying Lawsuit and DAN's Declaratory-Judgment Action.**

The Underlying Lawsuit arises from the drowning death of a twelve-year-old, D.H., during an open-water scuba certification dive conducted by ScubaToys at a facility owned by Scuba Ranch in Texas on August 16, 2025. Compl. ¶¶ 1, 29–41. D.H.'s parents sued ScubaToys, Scuba Ranch, PADI, NAUI, NSG, and several individuals for negligence, gross negligence, wrongful death, and survival claims. Compl. ¶ 29. The claims asserted against NSG and NAUI in the Underlying Lawsuit are that they promulgated inadequate training and safety standards, authorized excessive student-to-instructor ratios, and failed to vet or discipline certified instructors and facilities — conduct alleged to have occurred at the level of NAUI's certification program generally, not as part of any on-site conduct by NSG or NAUI personnel in Texas. Compl. ¶ 47. NSG and NAUI were not present at the dive site, had no representative or employee there, exercised no control over the details of the training or the dive, and had no knowledge of the water conditions, the instructor-to-student ratio actually used that day, or the instructor's alleged fatigue. Tysall Decl. ¶¶ 8, 9 (App. at 2).

DAN filed this separate declaratory-judgment action, seeking a declaration that it has no duty to defend or indemnify Movants — including NSG and NAUI — under a series of commercial general liability and professional-liability policies. Compl. ¶¶ 2, 22–28, 60–64. DAN

alleges that "[t]his Court has personal jurisdiction over PADI, NSG, and NAUI because this dispute arises out of or relates to their contacts with Texas," citing three things: (1) "The Underlying Lawsuit is pending in Texas"; (2) "the alleged injury that is the subject of the Underlying Lawsuit occurred in Texas"; and (3) "DAN's alleged obligations to provide coverage for the Underlying Lawsuit are centered in Texas, and PADI, NSG, and NAUI each seek to avail themselves of the benefits of such insurance in Texas." Compl. ¶ 17. DAN alleges no other basis for personal jurisdiction over NSG or NAUI and does not allege that either has any office, employee, property, or ongoing business presence in Texas. *See generally* Compl.

### C. NSG and NAUI's Request for a Defense — and DAN's Response — Occurred Entirely Outside Texas.

The conduct that actually gives rise to DAN's claims against NSG and NAUI — as distinct from the Underlying Plaintiffs' tort claims against them — is the parties' insurance correspondence. NSG and NAUI's request that DAN provide a defense under the DAN policies was submitted to DAN at DAN's principal place of business in Charleston, South Carolina. Tysall Decl. ¶ 11 (App. at 3). DAN's decision to respond to that request by agreeing to defend NSG and NAUI under a reservation of rights — the very decision whose propriety DAN now asks this Court to review — was made by DAN at its South Carolina headquarters and was communicated to NSG and NAUI at their offices in Florida. *Id.* ¶¶ 12–13 (App. at 3); *see also* Compl. n.1 (DAN is providing Movants "a defense to the underlying lawsuit under a full reservation of rights"). No NSG or NAUI representative traveled to Texas, negotiated with DAN in Texas, or transmitted any coverage-related communication to or from Texas in connection with this dispute. Tysall Decl. ¶¶ 11–14 (App. at 3). The only connection this coverage dispute

has to Texas is the coincidence that the Underlying Lawsuit — a separate action to which DAN is not even a party — happens to be pending in a Dallas County state court.

## III. THE COURT LACKS PERSONAL JURISDICTION

### A. Rule 12(b)(2) Legal Standard

Federal Rule of Civil Procedure 12(b)(2) permits dismissal for lack of personal jurisdiction.

> A federal court in Texas can exercise personal jurisdiction over a foreign defendant only if (1) Texas's long-arm statute, as interpreted by the state's courts, extends to cover the defendant's conduct and (2) exercising jurisdiction is consistent with due process. *Sangha v. Navig8 Ship Management Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018); *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). The Texas long-arm statute extends to the limits of federal due process. *Johnston*, 523 F.3d at 609. So, for federal courts sitting in Texas, the two-step analysis becomes one federal due process analysis. *Id*.
>
> Due process requires that a foreign defendant have "minimum contacts" with the forum state such that exercising jurisdiction over the defendant would be consistent with "fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (internal quotation marks and citation omitted). How robust a defendant's forum contacts are gives rise to either general jurisdiction or specific jurisdiction. The latter, which we address here, "arise[s] from, or [is] directly related to, the cause of action." *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001) (quotation omitted). Specific jurisdiction focuses on the relationship between the defendant, the forum, and the litigation. *Walden v. Fiore*, 571 U.S. 277, 283-84, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014).
>
> To determine if specific jurisdiction is proper, we look at whether: (1) the defendant "purposely directed" its conduct toward the forum state or "purposefully availed" itself of the privileges of the state; (2) the claim arises out of or relates to the defendant's forum-related contacts; and (3) the exercise of jurisdiction would be "fair and reasonable." *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019) (quotation omitted); *see Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362, 141 S. Ct. 1017, 209 L. Ed. 2d 225 (2021). Once it checks all three boxes, the court can exercise specific

> jurisdiction over a nonresident—even a nonresident whose contacts with the forum state are "singular or sporadic." *Sangha*, 882 F.3d at 101 (quotation omitted).

*Rusesabagina v. Gainjet Aviation*, No. 24-50630, 2025 U.S. App. LEXIS 24230, at *10-12 (5th Cir. 2025).

There are two forms of personal jurisdiction — general and specific. General jurisdiction permits suit on any claim, whether or not related to the forum, but exists only where the defendant is "at home," which for a corporation ordinarily means its place of incorporation and principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017). Specific jurisdiction, by contrast, requires that the suit "arise out of or relate to the defendant's contacts with the forum," *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (quotation omitted), and demands "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 262 (2017) (quotation omitted). Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation." *Monkton Ins. Servs. v. Ritter*, 768 F.3d 429, 432-33 (5th Cir. 2014). Critically, the "minimum contacts" analysis looks to the defendant's own contacts with the forum — not the contacts of the plaintiff or third parties, and not the unrelated fact that a plaintiff or third party has ties to the forum. *Walden v. Fiore*, 571 U.S. 277, 284–86 (2014).

## B. This Court Lacks Personal Jurisdiction Over NSG and NAUI.

### 1. NSG and NAUI Are Not Subject to General Jurisdiction in Texas.

DAN does not — and cannot — allege that NSG or NAUI is "at home" in Texas. Both are Florida entities, organized under Florida law, with their principal places of business in

Riverview, Florida. Compl. ¶¶ 8–9; Tysall Decl. ¶¶ 4–5 (App. at 2). Neither maintains an office, employee, bank account, or item of real property in Texas. Tysall Decl. ¶ 6 (App. at 2). Under *Daimler* and *BNSF*, that ends the general-jurisdiction inquiry: absent the sort of "exceptional case" in which a corporation's operations in a forum are so substantial as to render it "at home" there — which DAN does not allege and which is not remotely present here — general jurisdiction is unavailable. *BNSF*, 581 U.S. at 413; *Daimler*, 571 U.S. at 139 n.19; *Monkton*, 768 F.3d at 432 (rejecting general jurisdiction based on website and wire-transfer contacts far more substantial than anything alleged here). Indeed, DAN's Complaint does not even attempt to plead general jurisdiction over NSG or NAUI — it relies solely on the "contacts with Texas" language of Paragraph 17, which sounds exclusively in specific jurisdiction. (Compl. ¶ 17.)

**2. NSG and NAUI Are Not Subject to Specific Jurisdiction in Texas.**

Specific jurisdiction requires that the suit "arise out of or relate to" the defendant's own purposeful contacts with the forum. *Ford Motor Co.*, 592 U.S. at 359; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). The defendant — not the plaintiff, and not some other party to some other lawsuit — must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *Burger King*, 471 U.S. at 475. This requirement "ensures that a defendant will not be hauled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King*, 471 U.S. at 475. And it is the defendant's own contacts that matter: "the relationship must arise out of contacts that the 'defendant himself' creates with the forum State," not contacts created by "the plaintiff or third parties." *Walden*, 571 U.S. at 284–85 (quoting *Burger King*, 471 U.S. at 475). "The unilateral

activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State." *Id.* at 286 (quotation omitted).

Paragraph 17 of DAN's Complaint offers three grounds for personal jurisdiction over NSG and NAUI. None survives scrutiny under these settled principles.

**a. The Location of the Underlying Lawsuit Is a Fortuity, Not a Contact by NSG or NAUI.**

DAN's first and second grounds — that "[t]he Underlying Lawsuit is pending in Texas" and that "the alleged injury that is the subject of the Underlying Lawsuit occurred in Texas," Compl. ¶ 17 — describe conduct and events involving the Underlying Plaintiffs, ScubaToys, Scuba Ranch, and the individual Texas Defendants. They describe nothing that NSG or NAUI did in Texas; the quoted excerpts from the Petition do not contain any facts suggesting that any alleged conduct by NSG or NAUI related to this lawsuit took place in the State of Texas. NSG and NAUI were not present at the dive site, had no employee or representative there, exercised no control over the training or the dive, and had no knowledge of the conditions that led to D.H.'s death. Tysall Decl. ¶¶ 8–9 (App. at 2). That a lawsuit to which NSG and NAUI are parties happens to be filed in Texas — because the underlying tort happened to occur there — is precisely the kind of "isolated occurrence" and "fortuitous circumstance" that the Supreme Court has held cannot support personal jurisdiction. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295, 297–98 (1980) (rejecting jurisdiction based on the "fortuitous circumstance" that a product happened to cause injury in the forum, and holding that the "foreseeability that is critical to due process analysis" is not the mere likelihood that harm will occur in a state, but whether the defendant's own "conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there").

Nor can the location of the Underlying Plaintiffs' injury substitute for a purposeful contact by NSG or NAUI. A defendant's amenability to suit cannot rest on where a third party (here, D.H. and her parents) happened to be injured, particularly where — as here — the defendant had no presence, involvement, or control at the location in question. *See Walden*, 571 U.S. at 289–90 (a plaintiff's or third party's having "suffered foreseeable harm" in the forum does not supply the defendant's own contact with it); *Bristol-Myers Squibb*, 582 U.S. at 264 (specific jurisdiction requires "a connection between the forum and the specific claims at issue," and a defendant's "relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction"). This is confirmed by DAN's own pleading: the claims the Underlying Plaintiffs assert against NSG and NAUI concern corporate-level decisions about training standards, certification, and instructor discipline — decisions Plaintiffs do not allege were made in Texas. (Compl. ¶ 47.) The situs of D.H.'s death establishes, at most, jurisdiction over the parties who were actually present and in control there; it establishes nothing about NSG or NAUI.

**b. DAN's Coverage Claims Against NSG and NAUI Did Not Arise from Any Texas Contact.**

DAN's third ground — that "DAN's alleged obligations to provide coverage for the Underlying Lawsuit are centered in Texas, and . . . NSG[] and NAUI each seek to avail themselves of the benefits of such insurance in Texas" (Compl. ¶ 17) — fares no better and is affirmatively contradicted by the undisputed facts. This is a coverage dispute, not a tort suit; the "activity or . . . occurrence" from which DAN's claims against NSG and NAUI actually arise is the parties' insurance correspondence — the request for a defense and DAN's response to it — not the underlying dive. *See Bristol-Myers Squibb*, 582 U.S. at 262. And that correspondence occurred entirely outside Texas: NSG and NAUI's request for a defense was submitted to DAN

at DAN's offices in Charleston, South Carolina, and DAN's decision to defend Movants under a reservation of rights was made in South Carolina and communicated to NSG and NAUI in Florida. Tysall Decl. ¶¶ 11–13 (App. at 3). No part of that exchange touched Texas.

The Fifth Circuit's decision in *Halliburton Energy Services, Inc. v. Ironshore Specialty Insurance Co.*, 921 F.3d 522 (5th Cir. 2019), confirms that this kind of coverage correspondence cannot support jurisdiction even when it is directed into the forum — let alone when, as here, it was not. In *Halliburton*, the court held that an insurer's demand letters sent into Texas did not establish minimum contacts, explaining that "the non-resident defendant's actions — not those of another party — are relevant for assessing minimum contacts," and that responding to litigation or making a demand on a third party is not the kind of purposeful availment the Constitution requires. *Id.* at 542. Here, NSG and NAUI's coverage request was not even directed at Texas — it went to DAN's own headquarters in South Carolina. DAN cannot manufacture jurisdiction over NSG and NAUI in Texas by pointing to a request that DAN itself received in South Carolina, or to a coverage decision that DAN itself made in South Carolina and sent to Florida.

Nor does the generic allegation that NSG and NAUI "seek to avail themselves of the benefits of . . . insurance in Texas," Compl. ¶ 17, supply the missing contact. That allegation is conclusory, and conclusory jurisdictional allegations are not entitled to the presumption of truth that ordinarily attaches to a plaintiff's pleading on a Rule 12(b)(2) motion. *See Sangha*, 882 F.3d at 101; *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001) (rejecting jurisdiction where the defendant's contacts with Texas were "unrelated to Texas other than the fortuity" of a connection to a Texas resident).

To the extent DAN means only that NSG and NAUI contend that the Underlying Lawsuit — which happens to be in Texas — will ultimately be covered, that is the fortuity of where the underlying tort occurred, repackaged. It is not a purposeful contact by NSG or NAUI with Texas; if anything, it underscores NSG and NAUI's connection to Florida and South Carolina, where the actual coverage request and response took place.

#### c. Additional Considerations Confirm the Absence of Jurisdiction.

Beyond the specific allegations of Paragraph 17, nothing else in the record supplies a purposeful Texas contact by NSG or NAUI relevant to DAN's coverage claims. NSG and NAUI have no contractual relationship with Scuba Ranch or ScubaToys. Tysall Decl. ¶ 10 (App. at 3). Neither NSG nor NAUI supervises, and NAUI's certification standards do not require them to supervise, the day-to-day training or diving activities of independently certified instructors and divemasters like Knauer, Armstrong, and Roussel. *Id*. ¶¶ 7, 9. NSG and NAUI's only historical presence in Texas has been through an independent-contractor sales representative whose role is unrelated to this coverage dispute and who had no involvement in the events underlying either the Underlying Lawsuit or DAN's coverage decision. *Id*. ¶ 10. None of this supplies the "substantial connection" between a purposeful Texas contact and "the operative facts" of DAN's coverage claims that due process requires. *See Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 585 (Tex. 2007) (a defendant's forum contacts must have a "substantial connection" to the "operative facts of the litigation," not a merely theoretical relationship to it).

### 3. Exercising Jurisdiction Over NSG and NAUI Would Offend Fair Play and Substantial Justice.

Even if NSG and NAUI had purposefully directed some activity toward Texas — and they have not — the exercise of jurisdiction here would still offend "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316. NSG and NAUI are Florida-based entities with no Texas presence; the burden of defending a coverage suit far from their home offices, over an insurance transaction that never touched Texas with regard to them, is substantial. Texas's interest in adjudicating this particular coverage dispute — as opposed to the Underlying Lawsuit, which will proceed in Texas state court regardless — is minimal, since the dispute concerns the conduct of a South Carolina insurer toward Florida insureds. And DAN's own choice to respond to the coverage request from its South Carolina headquarters undercuts any claim that Texas is a more convenient or appropriate forum for resolving that dispute. See *World-Wide Volkswagen*, 444 U.S. at 292 (identifying these reasonableness factors).

## C. Conclusion

"Plaintiffs may 'forum-shop' to the extent they may choose the forum in which they sue. However, that privilege is not absolute, as it has always been limited by the principles of general and specific personal jurisdiction." *Shambaugh & Son, L.P. v. Steadfast Ins. Co.*, 91 F.4th 364, 376 (5th Cir. 2024). Here, the Court has neither general nor specific jurisdiction over NSG or NAUI regarding the claims asserted against them in this case.

# IV. VENUE IS IMPROPER AS TO NSG AND NAUI.

## A. Rule 12(b)(3) Legal Standard

Federal Rule of Civil Procedure 12(b)(3) permits dismissal for improper venue. In a diversity action such as this one, venue is proper only in (1) a judicial district in which any

defendant resides, if all defendants reside in the same state; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or (3), if no other district will do, any judicial district in which any defendant is subject to personal jurisdiction. 28 U.S.C. § 1391(b).

"When venue is challenged, the court must determine whether the case falls within one of the three categories set out in §1391(b). If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred …." *Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 56 (2013).

> "Once a defendant has objected to venue, the burden shifts to the plaintiff to establish that venue is proper *as to each defendant and each claim*." *Nuttall v. Juarez*, 984 F. Supp.2d 637, 642 (N.D. Tex. 2013) (emphasis added); *see Redi-Mix Sols. Ltd. v. Express Chipping, Inc.*, Civ. Action No. 6:16-CV-298-RWS-KNM, 2017 U.S. Dist. LEXIS 221118, 2017 WL 3671377, at *8 (E.D. Tex. Feb. 9. 2017) ("In actions involving multiple defendants and multiple claims, the plaintiff must establish venue is proper as to each defendant and as to each claim.").

*Southampton, Ltd. v. Norman*, Civil Action No. 3:18-CV-1089-K, 2019 U.S. Dist. LEXIS 227279, at *14 (N.D. Tex. 2019).

**B. Venue is Improper**

**1. The Residential Venue Provision, § 1391(b)(1), does not apply.**

Section 1391(b)(1) does not apply because not all Defendants reside in the same state: the individual and Texas-entity Defendants reside in Texas, PADI Americas and PADI Worldwide are California corporations, and NSG and NAUI are Florida entities. 28 U.S.C. § 1391(b)(1); Compl. ¶¶ 4–15.

**2. The Transactional Venue Provision, § 1391(b)(2), does not apply.**

Section 1391(b)(2), which requires that "a substantial part of the events or omissions giving rise to the claim" against NSG and NAUI occurred in this District. It did not.

Courts assessing whether "a substantial part of the events" occurred in a particular district conduct a two-step inquiry: first identifying the nature of the plaintiff's claims and the acts or omissions the plaintiff alleges give rise to them, and second, asking whether a substantial part of those acts or omissions — as opposed to merely some part — occurred in the chosen district. *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432–33 (2d Cir. 2005); *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1166 (10th Cir. 2010). Courts must "take seriously the adjective 'substantial'" and construe the venue statute strictly, so that a defendant is not haled into "a remote district having no real relationship to the dispute." *Daniel*, 428 F.3d at 432 (quotation omitted). Substantiality under § 1391(b)(2) is a qualitative rather than quantitative inquiry, determined by assessing the nature of the plaintiff's claims and the nature of the specific events in the forum. *Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc.*, 982 F. Supp. 2d 717, 722 (W.D. Tex. 2013). A selected judicial district must have a substantial connection to the claim. *Id*.

Applying the two-step inquiry courts use to assess § 1391(b)(2) — first identifying the acts or omissions giving rise to the claims against NSG and NAUI, and then asking whether a substantial part of those acts occurred here, *Daniel*, 428 F.3d at 432–33 — the claims DAN asserts against NSG and NAUI arise from the parties' insurance correspondence: NSG and NAUI's request for a defense, submitted to DAN in South Carolina, and DAN's decision to defend under a reservation of rights, made in South Carolina and communicated to Florida. Tysall Decl. ¶¶ 11–13 (App. at 3). None of that occurred in the Northern District of Texas.

The mere fact that the Underlying Lawsuit — which gives rise to the need for a defense, but is not itself the subject of DAN's declaratory-judgment claims — happens to be pending in Dallas County does not convert this District into one where "a substantial part of the events . . . giving rise to" DAN's coverage claims occurred. "An underlying lawsuit, without more, does not establish proper venue." *AIG Prop. Cas. Co. v. Francis*, No. SA-21-CA-530-FB, 2021 U.S. Dist. LEXIS 273494, at *6 & *7 (W.D. Tex. 2021). "[T]he location of the filing of the underlying lawsuit is a proper basis for venue only where it is related to the core consideration in the Court's 28 U.S.C. § 1391(b)(2) analysis—the events giving rise to the claim (i.e., the events giving rise to the insurance coverage dispute)." *Id*. at *7. Courts routinely hold that the location of an underlying tort suit does not, by itself, establish venue over a related coverage dispute whose own operative facts — such as requests for defense and coverage determinations — occurred elsewhere. *See, e.g., Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167–70 (10th Cir. 2010) (venue for an insurer's declaratory-judgment action against its insured turned on where the CGL policies were negotiated and executed, where the insured's claim for a defense was submitted, and where the insurer's coverage decision was made although underlying tort suit was pending in a different state).

**3. The Fallback Venue Provision, § 1391(b)(3), does not apply.**

The Court looks to § 1391(b)(3) only if no other § 1391(b) provision applies. *Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 56 (2013) ("the third paragraph provides fallback option"). This provision only applies in the "rare" circumstance where "there is no federal district that will satisfy either the residential venue or transaction venue provisions." CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3806.1 (4th ed. 2024).

Section 1391(b)(3) does not apply here because DAN's claims against NSG and NAUI plainly "may otherwise be brought" in a district that satisfies § 1391(b)(2) — for example, in Florida, where NSG and NAUI are located, from whence the requests for a defense were made, and to which DAN's coverage denial was sent. *See, e.g., Founders Ins. Co. v. Billy's Bar & Grill, LLC*, Civil Action No. 3:18-cv-00367-M, 2019 U.S. Dist. LEXIS 183293, at *16 (N.D. Tex. 2019) (communications regarding coverage supported venue under § 1391(b)(2) for insurance declaratory judgment action; underlying state court case was pending in a different district ); *Siragusa v. Arnold*, No. 3:12-CV-04497-M, 2013 U.S. Dist. LEXIS 131740, 2013 WL 5462286, at *3 (N.D. Tex. Sept. 16, 2013) ("communications to the district can constitute a substantial part of the events giving rise to a plaintiff's claims, if the claims derive directly from those communications").[2]

**C. Conclusion**

The purpose of § 1391 is to ensure that the plaintiff does not select a venue that is unfair or inconvenient to the defendant. NSG and NAUI have no real relationship to this District with respect to DAN's coverage claims. Their headquarters, their request for a defense, and their receipt of DAN's coverage decision are all in Florida; DAN's own conduct in responding to that request occurred in South Carolina. Venue over DAN's claims against NSG and NAUI therefore does not lie in the Northern District of Texas.

[2] It is well-established "that there can be more than one district in which a substantial part of the events giving rise to the claim occurred." CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3806 (4th ed. 2024); *see Hawbecker v. Hall*, 88 F. Supp. 3d 723, 731 (WD. Tex. 2015) ("Venue may be proper in multiple locations.").

## V. CONCLUSION AND PRAYER

For the foregoing reasons, Movants NAUI Services Group, Inc. and National Association of Underwater Instructors, Inc., respectfully request that the Court dismiss DAN's claims against them for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3), and grant Movants such other and further relief, at law or in equity, to which they may show themselves justly entitled.

Dated: August 24, 2026.

Respectfully submitted,

*/s/ James McCorquodale*
James McCorquodale
Texas Bar No. 13464900
LAW OFFICE OF SANDY MCCORQUODALE, P.C.
12700 Hillcrest Road, Suite 125
Dallas TX 75230
Tel. 214-712-4472
Fax 815-572-9448
Email: Sandy@SMQLAW.com

COUNSEL FOR DEFENDANTS NAUI SERVICES GROUP, INC., AND NATIONAL ASSOCIATION OF UNDERWATER INSTRUCTORS, INC.